**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| **WEIJIE LU,** : | | |
| **1349 Clydesdale Court** : | **Case No.** | |
| **Dayton, Ohio 45458** : | | |
| : | **Judge** | |
| **Plaintiff,** : | | |
| : | | |
| v. : | | |
| : | | |
| **UNIVERSITY OF DAYTON,** : | | |
| **c/o ACME Agent, Inc.** : | **DEMAND FOR JURY TRIAL** | |
| **41 S. High Street, Suite 2800** : | | |
| **Columbus, Ohio 43215** : | | |
| : | | |
| **Defendant.** : | | |

**COMPLAINT**

Now comes Plaintiff Weijie Lu, by and through undersigned counsel, and for his Complaint against Defendant University of Dayton, states and avers as follows:

**THE PARTIES**

1. Plaintiff Weijie Lu (hereafter "Plaintiff" or "Dr. Lu") is a resident of the State of Ohio, County of Montgomery.

2. Defendant University of Dayton ("Defendant" or the "University") is an Ohio corporation with its principal place of business in Dayton, Ohio, Montgomery County.

3. At all times alleged herein, Plaintiff was an employee of Defendant in the same has been defined by 42 USC Section 2000e-5(f).

**JURISDICTION AND VENUE**

4. Plaintiff incorporates his allegations set forth in paragraphs 1 through 3 above as if fully written herein.

5. Jurisdiction of this Court is invoked pursuant to 42 USCS § 2000e-2(a) and 28 USC Section 1331. Supplemental Jurisdiction is invoked pursuant to 28 USC §1367.

6. Plaintiff has satisfied all pre-requisites for filing suit, including but not limited to obtaining a Notice of Suit Right from the Equal Employment Opportunity Commission dated January 11, 2022. A copy of the "Notice" is attached hereto as Exhibit "A."

7. The unlawful discrimination and employment practices alleged below were committed within the State of Ohio, in the Southern District, Western Division of this Federal Court.

8. At all relevant times hereto, Plaintiff worked for Defendant in Montgomery County, Ohio, which is the county in which Defendant conducted the activity that gave rise to Plaintiff's claims for relief, and the county in which all or part of Plaintiff's claims arose.

9. At all times pertinent hereto, Defendant was an "Employer" within the meaning of Title VII of the Civil Rights Act of 1964 as amended, 42 USC § 2000e(d) as well as Title 4112 of the Ohio Revised Code.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

10. Plaintiff incorporates his allegations set forth in paragraphs 1 through 9 above as if fully rewritten herein.

11. Plaintiff received a Ph.D. in Materials Engineering from Brown University in 1996, a Master's of Science in Chemical Engineering from Brown University in 1993, a Master's of Science in Physics from the University of Memphis in 1991, a Master's of Science in Chemistry from the University of Science and Technology of China in 1988, and a Bachelors of Science degree in Chemical Engineering from the Zhejiang Institute of Technology in 1985.

12. The University hired Dr. Lu in August 2014 as an adjunct professor in the University's Department of Physics.

13. Dr. Lu taught one or two Physics classes each semester for the University between August 2014 and spring semester 2020.

14. Dr. Lu also acted as a thesis advisor for the University's Ph.D. students.

15. Between 2012 through 2014, Dr. Lu was a thesis technical advisor for Sorrie Ceesay ("Ceesay") who was pursuing his Ph.D. in Materials Engineering at the University. Previously, Dr. Lu was Ceesay's advisor for Ceesay's Master's work at Fisk University.

16. Dr. Lu is of Chinese descent. Ceesay is an African American. Both Dr. Lu and Ceesay are U.S. citizens.

17. Ceesay's Ph.D. research was funded through the Defense Associated Graduate Student Innovators ("DAGSI") program.

18. DAGSI is an Ohio program funded by the Ohio Department of Higher Education and the United States Air Force that supports science and engineering graduate students and faculty who conduct research in areas targeted by the Air Force Research Laboratory ("AFRL") at Wright Patterson Air Force Base ("WPAFB"). The University participates in DAGSI and has faculty and students that conduct research at AFRL. The DAGSI program requires the research work its grants fund are awarded to students that are U.S. Citizens.

19. Dr. Lu previously performed research at AFRL from 2001 through 2013. During this time, other professors at the University also conducted research at AFRL, including but not limited to Christopher Muratore ("Muratore").

20. In 2012 through 2014, Ceesay was a Ph.D. student enrolled at the University. Ceesay performed research at AFRL pursuant to a DAGSI grant.

21. In late 2019, Dr. Lu became aware that in 2014 AFRL terminated Ceesay because AFRL alleged Ceesay was not a U.S. Citizen. The University was aware Ceesay was a U.S. Citizen because he was awarded a DAGSI grant. The University did not continue Ceesay's Ph.D. enrollment despite Ceesay's status as a U.S. Citizen.

22. On January 28, 2020, Dr. Lu reported to the University that AFRL, DAGSI, and the University terminated and discriminated against Ceesay on the basis of his race and requested the University remedy its actions (the "Ceesay Complaint"). Dr. Lu made the Ceesay Complaint via email to Kimberly Bakota, Title IX/Section 504 Coordinator and Equity Compliance Officer.

23. Bakota and the University ignored Dr. Lu's report and advised Dr. Lu to contact the EEOC.

24. Scott Segalewitz, Associate Dean for Experiential Learning and Student Success, did not responded to Dr. Lu's January 28, 2020 email. On February 7, 2020, Dr. Lu called Segalewitz about the Ceesay Complaint. Segalwitz responded the University had no record of Ceesay and he could not release any information regarding Ceesay's enrollment. After Dr. Lu informed Segalewitz about the Ceesay Complaint details, Segalewitz sent an email to Paul Benson, the University's Provost, Bakota, and cc'd Dr. Lu. In his email, Segalwitz stated he received "an earful" from Dr. Lu, Dr. Lu did not like his responses, and wished Provost Benson "good luck" in dealing with Dr. Lu.

25. Dr. Lu later learned Segalwitz sent him this email in error, but Segalwitz never explained his comments describing Dr. Lu's complaints in the email. Segalwitz, Bakota, and Benson were aware of the Ceesay Complaint's details.

26. The University did not investigate Dr. Lu's racial discrimination allegations against Ceesay.

27. Two weeks earlier, on January 10, 2020, John Erdei ("Erdei"), Chair of the University's Physics Department, emailed Dr. Lu about his adjunct professor teaching assignment for the Fall 2020 semester. Dr. Lu accepted the adjunct professor position for two Physics classes, as he had for the past six years.

28. On March 26, 2020, student enrollment began, and Dr. Lu was listed as the professor for two General Physics I (PHY 206) classes. Enrollment was full for both Dr. Lu's classes and 30 students had signed up to take Dr. Lu's Physics courses.

29. Over the next several months, Erdei sent emails to the Physics Department, including Dr. Lu, and indicated the enrollment in Physics classes was "strong."

30. In April 2020, Dr. Lu had not heard back from the University whether it would investigate the Ceesay Complaint. Dr. Lu sought guidance from Erdei. Erdei instructed Dr. Lu to wait. And, on April 26, 2020, Erdei advised Dr. Lu against speaking with anyone about the Ceesay Complaint or elevating his concerns higher in the University's administration.

31. On July 10, 2020, Erdei emailed Dr. Lu and terminated Dr. Lu as an adjunct professor for the Fall 2020 term. Erdei advised Dr. Lu he could not get approval from the Provost for Dr. Lu's appointment. Erdei stated he had to redistribute Physics classes amongst professors because enrollment in Physics classes was low.

32. On July 19, 2020, Dr. Lu contacted Provost Benson and President Spina and detailed the Ceesay Complaint and his termination as an adjunct professor.

33. Provost Benson responded later that same day on July 19, 2020 and advised Dr. Lu his termination was a departmental matter and he would need to discuss his termination with Erdei. Benson further responded the University already advised Dr. Lu regarding his Ceesay Complaint and no further response was required.

34. Erdei encouraged Dr. Lu to apply for full-time positions with the University and maintained he, as Chair of the Physics Department, could not approve Dr. Lu's adjunct professor position.

35. The University later informed Dr. Lu Provost Benson made the decision to terminate adjunct professors, despite Provost Benson's earlier explanation to Dr. Lu.

36. The University later indicated it would award contacts to each adjunct professor in the Physics department. Dr. Lu did not receive a contract.

37. Dr. Lu filed a charge with the Ohio Civil Rights Commission regarding the Ceesay Complaint and his termination on January 5, 2021.

38. On February 5, 2021, Dr. Lu applied for a full-time faculty position as an Associate Professor in Electro-Optics and Photonics department with the University (the "Photonics job").

39. Dr. Lu maintained the minimum qualifications for the Photonics job due to his extensive education, teaching history, and prior research.

40. On February 23, 2021, Dr. Lu received a generic email from the University informing him he was not selected for the Photonics job. The University hired another candidate that was not of Chinese descent.

41. Dr. Lu filed a second charge with the Ohio Civil Rights Commission on March 30, 2021 regarding the University's failure to hire and retaliation.

42. The University's reasons for Dr. Lu's termination and its failure to hire Dr. Lu into a full-time position are pretext.

43. In early 2021, Dr. Lu discovered his work had been plagiarized by a professor, Christopher Muratore, through research funded by the University. On July 19, 2021, Dr. Lu wrote a letter detailing the plagiarism and sent it to President Spina, Bakota, Provost Benson, Eddy Rojas

– Dean of Engineering, Margaret Pinnell – Acting Dean, Candise Powell – Legal Affairs, Lawrence Bunley – Vice President, and Kristen Krupa – Chairperson.

44. Muratore is a Caucasian male.

45. The letter detailed Dr. Lu's research experience on carbon nanostructural research for nonlinear optics dating back to 2000 across facilities including the Space Science Lab at NASA, AFRL through a 2012 DAGSI proposal, and at the University.

46. In September 2018, Muratore published a paper titled "Synthesis and characterization of graphene nanocomposites for non-linear optical applications" in the Journal of Diamond & Related Materials. The paper copied Dr. Lu's research at the AFRL.

47. Muratore was a Research Staff member in the University's Department of Chemical and Materials Engineering at the time he plagiarized Dr. Lu's research. Moreover, the paper Muratore published in September 2018 was not a topic in his research area. Muratore gained access to Dr. Lu's research after Ceesay was terminated and the University assigned Muratore to supervise another Masters student's thesis on Dr. Lu's research topic.

48. After Muratore plagiarized Dr. Lu's research, Muratore became the Ohio Research Scholars Endowed Chair Professor. Prior to using Dr. Lu's research, Muratore did not have research experience in this area.

49. The University maintains a policy against plagiarism titled "Policy on Misconduct in Research and Scholarship" (hereafter the "Plagiarism Policy"). The Plagiarism Policy requires the University to:

    a. Conduct an investigation within 15 days of a plagiarism report if the allegation is supported by the facts.

  b. The Director or the Provost to determine if there is credible evidence to support the plagiarism allegation.

  c. To substantiate plagiarism allegations, the Director or Provost must find be a preponderance of the evidence the allegation is supported by evidence.

50. The Plagiarism Policy applies to all University scholars and professional researchers conducting research.

51. On August 22, 2021, Provost Benson wrote to Dr. Lu and informed him the University found no evidence of plagiarism and closed its investigative file.

52. Muratore benefitted from Dr. Lu's research that Muratore plagiarized.

## **COUNT I – TITLE VII RACE & NATIONAL ORIGIN DISCRIMINATION**

53. Plaintiff hereby incorporates his allegations set forth in Paragraphs 1 through 52 above as if fully rewritten herein.

54. Plaintiff is of Chinese descent and is a member of a protected class.

55. Plaintiff was qualified for his job as an adjunct Physics professor and the Photonics job for which he applied.

56. Plaintiff was terminated from his adjunct professor job and rejected for the Photonics job.

57. Defendant hired someone outside Plaintiff's protected class for the Photonics job and for his adjunct professor job.

58. Defendant treated similarly situated coworkers and applicants outside Plaintiff's protected differently than Plaintiff, including but not limited to allowing Plaintiff's research to be plagiarized and published without recourse.

59. Defendant acted with malice and/or with reckless malfeasance to Plaintiff's protected rights, and for such willful conduct, Defendant is liable for punitive damages

60. As a direct and proximate result of Defendant conduct set forth above, Plaintiff has suffered damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he was entitled, pain and suffering, liquidated damages, attorney fees, costs interests and such further relief as this Court may deem proper in an amount to be determined at trial.

## COUNT II – TITLE VII RETALIATION

61. Plaintiff hereby incorporates his allegations set forth in Paragraphs 1 through 60 above as if fully rewritten herein.

62. Plaintiff engaged in a protected activity by filing a complaint with the University.

63. Defendant was aware Plaintiff engaged in a protected activity.

64. Defendant terminated Plaintiff's adjunct professor position and failed to hire Plaintiff to a full-time faculty position.

65. Plaintiff's protected activity was causally connected to his adverse employment actions.

66. Defendant acted with malice and/or with reckless malfeasance to Plaintiff's protected rights, and for such willful conduct, Defendant is liable for punitive damages.

67. As a direct and proximate result of Defendant's conduct set forth above, Plaintiff has suffered damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he was entitled, pain and suffering, liquidated damages, attorney fees, costs

interests and such further relief as this Court may deem proper in an amount to be determined at trial.

### COUNT III – PROMISSORY ESTOPPEL

68. Plaintiff hereby incorporates his allegations set forth in Paragraphs 1 through 67 above as if fully rewritten herein.

69. Defendant made a clear and unambiguous promise to Plaintiff and informed Plaintiff he would be teaching two Physics courses as an adjunct professor in the Fall 2020 term.

70. Plaintiff relied on Defendant's promise.

71. It was reasonable and foreseeable that Plaintiff would rely on Defendant's promise, as he had done for the prior six years.

72. As a direct and proximate result of Defendant's conduct set forth above, Plaintiff has suffered damages, including but not limited to lost wages and income, emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other benefits to which he was entitled, pain and suffering, liquidated damages, attorney fees, costs interests and such further relief as this Court may deem proper in an amount to be determined at trial.

**WHEREFORE,** Plaintiff Weijie Lu prays for judgment against Defendant University of Dayton, for compensatory and punitive damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he was entitled, in an amount to be determined at trial and an award of Plaintiff's costs and reasonable attorney fees incurred relating to this action; ALL TOGETHER WITH such other relief as may be just, necessary and proper.

Respectfully submitted,

**KEMP, SCHAEFFER, & ROWE CO., L.P.A.**

By: /s/ Erica Ann Probst
      Erica Ann Probst #0073486
      Andrea L. Salvino #0097768
      Attorneys for Plaintiff
      88 West Mound Street
      Columbus, Ohio 43215
      (614) 232-8692
      (614) 469-7170 (fax)
      Email: Erica@ksrlegal.com
           Asalvino@ksrlegal.com

## **JURY DEMAND**

Now comes Plaintiff, by and through counsel, and hereby demands that a jury hear the above case.

Respectfully submitted,

**KEMP, SCHAEFFER, & ROWE CO., L.P.A.**

By: /s/ Erica Ann Probst
      Erica Ann Probst #0073486
      Andrea L. Salvino #0097768
      Attorneys for Plaintiff
      88 West Mound Street
      Columbus, Ohio 43215
      (614) 224-2678
      (614) 469-7170 (fax)
      Email: Erica@ksrlegal.com
           Asalvino@ksrlegal.com